FILED
HARRISBURG, PA
FEB 19 2003
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA BARGE, et ux., | * | NO. 1:00-CV-1881 |
| Plaintiffs | * | |
| v. | * | CIVIL ACTION - LAW |
| DAVID J. SALINGER, M.D., et al., | * | Judge Conner |
| Defendants | * | JURY TRIAL DEMANDED |
| | * | |

************************

## PLAINTIFFS' PRE-TRIAL MEMORANDUM

1. <u>Nature of Action and Basis for Jurisdiction</u>: The nature of this action is medical negligence. Jurisdiction is based on diversity of citizenship, pursuant to 28 USC §1332(a).

2. <u>Statement of Facts</u>: Amanda Barge is a 45 year-old woman who at the time of the negligence that occurred in this case was a housewife and mother, as well as a bank teller, working full time at a bank in Westminster, Maryland. In 1999, Mrs. Barge was referred to the Defendant Salinger for radiation treatment of a basal cell anomaly of the right upper lip. Radiation therapy for this condition was recommended to Mrs. Barge as compared to surgical excision, as the cosmetic result was thought to be superior with radiation therapy versus surgery. Thus, beginning on May 24, 1999, Mrs. Barge presented to the Defendant Salinger for radiation therapy to the right upper lip. She was recommended for 4-5 weeks of treatment, five days a week, in Littlestown, Pennsylvania, which was close to her place of employment. From the time of the very first treatment, Mrs. Barge made complaints to the Defendant Salinger and others providing the radiation therapy, regarding the extreme pain and burning to the skin, followed by complaints of swelling, pain, and induration.

1

Despite Mrs. Barge's repeated complaints with regard to these symptoms, the radiation therapy was continued by the Defendant Salinger over a two and a half week time frame, during which time Mrs. Barge was constantly reassured that her symptoms were normal and to be expected. At no time during these treatments did the Defendants assess the machine to determine whether it was functioning properly.

Finally, after the blistering on both the skin and mucosal areas of Mrs. Barge's face became intolerably severe, Mrs. Barge refused further treatment. It was only at this time, for the first time, that the Defendants belatedly checked the machine; it was then that they ascertained that the dosages of radiation being administered to Mrs. Barge were in excess of that which was initially prescribed and thought to have been administered.

3. <u>A Comprehensive Statement of Undisputed Facts as Agreed to By Counsel</u>:

  a. Amanda Barge is a 45 year-old woman who at the time of the radiation treatment that occurred in this case was a housewife and mother, as well as a bank teller, working full-time at a bank in Westminster, Maryland.

  b. In 1999, Mrs. Barge was referred to the Defendant Salinger for radiation treatment of a basal cell anomaly of the right upper lip.

  c. Mrs. Barge was recommended to have radiation therapy for this condition, as compared to surgical excision, as the cosmetic result was though tot be superior with the radiation therapy.

  d. Beginning on May 24, 1999, Mrs. Barge presented to the Defendant Salinger for radiation therapy to the right upper lip.

  e. The Defendant Salinger recommended 4-5 weeks of treatment, five days a week, in Littlestown, Pennsylvania at the Defendant treatment center.

  f. At no time during any of the treatments rendered to the Plaintiff over the course of approximately 2-1/2 weeks, did the Defendant Salinger assess the treatment unit to determine whether it was functioning properly.

  g. At no time during any of the treatments rendered to the Plaintiff over the course of approximately 2-1/2 weeks, did the Defendant Ying assess the treatment unit to determine whether it was functioning properly.

2

    h. Mrs. Barge's radiation treatment was discontinued because Mrs. Barge refused to have any further treatments. Counsel for Defendant Salinger contends that the record establishes that once Dr. Salinger observed the mucositis, he made a determination to discontinue further treatments as well.

    i. After Mrs. Barge refused to have any more treatments, it was at this time, for the first time, that the Defendant Salinger checked to determine whether the radiation dosages administered to Mrs. Barge were correct. (See (i) above).

    j. After Mrs. Barge refused to have any more treatments, it was at this time, for the first time, that the Defendant Ying checked to determine whether the radiation dosages administered to Mrs. Barge were correct.

    k. The treatment unit utilized by the Defendants was a used and refurbished machine that was installed within one (1) month prior to the Plaintiffs first treatment with such machine.

    l. The Plaintiff Amanda Barge was one of the first two patients to be administered radiation therapy with this used/refurbished superficial x-ray unit.

    m. After Mrs. Barge refused further treatment because of the pain she was in, the Defendants determined that the radiation that was administered to Amanda Barge was substantially more than that which was originally prescribed.

    n. Mrs. Barge was treated conservatively for a period of 6-8 weeks following the discovery of her radiation burn injury, which was not successful.

    o. Mrs. Barge sustained full thickness, transmural burns to the area of radiation treatment because of overexposure to radiation.

    p. Mrs. Barge underwent a total of twelve surgical procedures by physicians at Johns Hopkins Hospital, Division of Plastic/Burn Surgery, for treatment and reconstruction of the injuries sustained during the course of radiation.

    q. All of the surgeries performed upon Mrs. Barge were required to be done as a consequence of the radiation burn injuries sustained by her during the course of radiation treatment provided by the Defendants.

    r. Mrs. Barge was diagnosed with depressive and anxiety disorders by Stephen Siebert, M.D.

    s. Dr. Siebert related Mrs. Barge's depressive and anxiety disorders to the radiation burn injuries and subsequent surgical procedures that Mrs. Barge underwent.

  t. Arthur and Amanda Barge were married in 1974, living in Carroll County, Maryland and raising their two daughters.

  u. Mr. and Mrs. Barge have never been separated during the course of their marriage.

  v. Mrs. Barge was absent from her employment for approximately 650 hours as a result of the need for medical attention for the radiation burn injury sustained through radiation treatment rendered by the Defendants.

  w. The Defendant Ying calibrated the used/refurbished treatment unit.

  x. The Defendant Ying certified the used/refurbished treatment unit for use on Amanda Barge.

  y. Dr. Ying did not perform any daily periodic constancy checks for radiation output, from the time of Amanda Barge's initial treatment through the time that Mrs. Barge refused any further treatment.

  aa. The Defendant Ying provided Defendant Salinger with pre-signed dose calculation sheets for use by Defendant Salinger.

  4(a)&(b). <u>Principal Injuries Sustained</u>: After Mrs. Barge refused further radiation treatment from the Defendants because of the pain she was in, it was ultimately determined that she received radiation in grossly excessive doses than that which was originally prescribed. Those caring for Mrs. Barge at the time of this initial over-radiation diagnosis, determined to treat her conservatively for a period of 6-8 weeks, recommending that Silvadene and Aquafur ointments be utilized with the hope that the burn would be managed. During this time, Mrs. Barge continued in excruciating pain, such that she was unable to eat, talk, or even sleep. Mrs. Barge became increasingly depressed over her physical condition, as well as her appearance.

  This conservative treatment was unsuccessful, as Mrs. Barge had sustained full thickness, transmural burns to the area as a consequence of the Defendants' negligence. Mrs. Barge was therefore referred to a burn specialist at Johns Hopkins Hospital, Dr. Leslie Wong, in July 1999. From this point in time, through the end of April 2002 (approximately three years), Mrs. Barge

was required to undergo a total of twelve (12) surgical procedures by those caring for her at the Division of Plastic/Burn Surgery, Johns Hopkins Hospital. These surgical procedures are as follows:

1. August 9, 1999 – Debridement and Excision of Necrotic Tissue

2. August 16, 1999 – Skin Grafting of the Radiation Burn Site, Utilizing the Neck as the Donor Site.

3. March 6, 2000 – V-Y Mucosal Advancement and Scar Revision

4. October 17, 2000 – Reconstruction of Right Upper Lip and Cheek; Excision of Scar Tissue

5. April 24, 2001 – Reconstruction of Right Upper Lip Vermilion with Mucosal Flap

6. August 28, 2001 – Resection of Lip Contracture and Skin Graft (Right Groin Donor Site)

7. November 20, 2001 – Cross Lip Flap Procedure

8. December 4, 2001 – Division of Pedicle Cross Lip Flap for Radiation Necrosis of Skin

9. December 20, 2001 – Flap Reconstruction

10. January 8, 2002 – Revision of Cross Lip Flap Reconstruction

11. March 5, 2002 – Release of Contracture with Z Plasty and Excision of Radiation Area; and Cheek Flap

12. April 16, 2002 – Excision of Contracture, Debulking, and Flap Reconstruction

All of the above surgeries were performed in an effort to restore function and attempt to reduce the amount of disfiguration and scarring to the face that occurred. During these years, and these surgeries, Mrs. Barge was in significant physical pain, and was emotionally anguished regarding her condition. She progressively became more anxious and depressed over her

condition as the numbers of surgeries continued, all as a consequence of the Defendants' negligence.

In January, 2002, Mrs. Barge underwent a psychiatric evaluation by Stephen W. Siebert, M.D., whose report was previously submitted. Dr. Siebert explains that Mrs. Barge suffers with depressive and anxiety disorders, all causally related to the radiation burn injury and subsequent surgical procedures that she has been required to undergo. Dr. Siebert explains that Mrs. Barge continued to experience emotional upset related to the cosmetic appearance of the burn, and anxiety regarding possible continued future treatment. Further, Dr. Siebert describes how Mrs. Barge requires ongoing medication for her depression and anxiety, and would benefit from medical psychotherapy to assist her in reducing her symptoms, and to cope with her appearance and social anxiety.

4(c).  <u>Present Disability and Damages</u>:  Arthur and Amanda Barge were married in 1974, living in Carroll County, Maryland and raising their two daughters. They have never been separated. Prior to the Defendants' negligence and resulting injuries, Mr. and Mrs. Barge enjoyed an active social life, often visiting with friends, going out to dinner, or entertaining friends in their home. As a consequence of the Defendants' negligence and resulting injuries, Mr. and Mrs. Barge's social life has been significantly and negatively impacted. Because of the physical pain, as well as the emotional upset regarding her appearance, social activity is no longer enjoyable, and instead, generates feelings of embarrassment and humiliation.

Since the time of the Defendants' negligence in May, 1999, Mrs. Barge has also been, and continues to be, significantly precluded from engaging in work, recreational, and household activities that she used to engage in before the negligence that occurred in this case. She has been rendered disabled from employment for significant amounts of time, and unable to perform

numerous household chores that she had previously engaged in, including vacuuming, carrying laundry, grocery shopping, and a myriad of other household duties. These duties are required to be performed by Mrs. Barge.

Mrs. Barge and her husband have essentially had the entire quality of their lives destroyed, as a consequence of the negligence as set forth above. Had those caring complied with the standards of care for her, Mrs. Barge would not have suffered with the significant burns, requiring twelve (12) surgeries over a three (3) year timeframe. Rather, Mrs. Barge would have returned to her family, resumed all of her normal activities, and enjoyed a normal life. Unfortunately, due to the negligence as described above, Mrs. Barge has in the past, and is presently suffering with a great deal of physical pain and mental anguish, anxiety, as well as embarrassment and humiliation over her condition. Despite the best efforts of those at the Johns Hopkins Burn/Plastic Surgery Department, Mrs. Barge is still left with obvious permanent facial disfigurement (see enclosed photos). Such physical pain and emotional anguish regarding her condition has negatively impacted upon the Barge's marital relationship, as well as Mrs. Barge's relationship with her children.

4(d). <u>Work Loss</u>: Prior to the Defendants' negligence, the Barges were a two-income family. Mrs. Barge has been rendered disabled from employment for significant periods of time as a consequence of the negligence as outlined above, missing more than 650 hours from her employment for a loss total of $7,224.55, and ultimately losing her bank teller job, causing additional financial and emotional stress as well.

7

4(e).   <u>Medical Bills</u>:

| Provider | Amount |
|---|---|
| Johns Hopkins Hospital | $13,534.02 |
| Johns Hopkins Hospital Physicians | $25,180.79 |
| Johns Hopkins Bayview Medical Center | $ 9,760.15 |
| Johns Hopkins Bayview Medical Center Physicians | $13,157.00 |
| Deogracias V. Faustino, M.D. | $    950.00 |
| Lawrence R. Feldman, M.D. | $      62.00 |
| Marilyn D. Miller, M.D. | $    262.00 |
| Quest Diagnostics | $    561.55 |
| Quest Diagnostics (04/19/00) | $    184.50 |
| Central PA Radiation/Oncology P.C. | $ 3,365.00 |
| Prescriptions | $ 1,294.18 |
|  | $68,311.19 |

4(f).   <u>Wage Loss</u>:

Year End 1999 – 595 hours @ 7.90/hr. = $4,700.50

Year End 2000 – 74 hours @ 8.31/hr. = $614.95

Year End 2001 – 205.50 hours @ 9.29/hr. = $1,909.10

TOTAL = $7,224.55

4(g).   <u>Pain and Suffering</u>:  See above.

5.   <u>Names and Addresses of Expert Witnesses with Specialty and Qualifications</u>:

    a.    Robert K. Brookland, M.D., Chairman
           Department of Radiation Oncology
           Greater Baltimore Medical Center
           6701 North Charles Street
           Baltimore, Maryland  21204
           **Specialty:  Radiation Oncology**

    b.    James Rodgers, Ph.D.
           2813 Blaine Drive
           Chevy Chase, Maryland  20815
           **Specialty:  Radiation Oncology Physics**

  c.  Glenn L. Tonnesen, M.D.
    111 Commonage Drive
    Great Falls, Virginia 22066
    **Specialty: Radiation Oncology**

  d.  Stephen W. Siebert, M.D.
    7402 York Road, Suite 301
    Towson, Maryland 21204
    **Specialty: Psychiatry**

  e.  Paul N. Manson, M.D.
    Johns Hopkins Plastic Surgery
    Johns Hopkins Outpatient Center
    8152 F McElderry Wing
    601 North Caroline Street
    Baltimore, Maryland 21287-0981
    **Specialty: Plastic, Reconstructive and Maxillofacial Surgery**

6. <u>Pleadings and Discovery, Including Depositions and Exchange of Experts Reports</u>: No outstanding issues.

7. <u>Summary of Legal Issues and Legal Authorities</u>: As indicated in the reports of the Plaintiffs' experts, the reactions experienced by Mrs. Barge during the time of the Defendants' radiation treatment, beginning with the very first treatment, were grossly inconsistent with what is to be expected from the type of treatment and dose that she was supposed to be receiving, and strongly indicated that she was receiving an overdosage. Dr. Salinger deviated from the accepted standards of care by failing to recognize this, and in failing to cease treatment and ask that Dr. Ying reassess the treatment unit when such clinical results were not as they should have been. Had Dr. Salinger acted in conformance with accepted standards of care and done so, (rather than waiting until his patient refused to continue treatment because of unremitting pain), the long term, full thickness radiation burn damage done to Mrs. Barge would have been avoided.

The Plaintiffs' experts have also opined, and will testify at trial, that the Defendant Ying deviated from accepted standards of care expected of a medical physicist, when he calibrated the treatment unit and certified it for clinical use after performing only a cursory set of measurements. With an unfamiliar used/refurbished treatment unit, the standards of care required that Dr. Ying's numerous sets of measurements, and that he institute <u>daily</u> periodic constancy checks of radiation output. Had Dr. Ying appropriately calibrated the unit, and performed daily periodic constancy checks as the standards of care required, the problems with the unit and calibration measurement would have been detected, and Mrs. Barge would not have been injured. The Plaintiffs' experts' opinions regarding Dr. Ying are corroborated by Dr. Das, a physicist whose report has been previously submitted by counsel for the Defendant Salinger. Dr. Das also believes that Dr. Ying breached the standards of care, causing radiation burns, injuries, and damages to Mrs. Barge. The Defendants Salinger and Ying deny that they breached the standards of care in the treatment and care rendered to Plaintiff Amanda Barge.

    8.    <u>Stipulations Desired</u>:

        a.    The Court has jurisdiction over this matter on the basis of diversity of citizenship, pursuant to Title 28 USC §1332(a).

        b.    The Defendant Salinger is the actual agent, servant, and/or employee of the Defendant Keystone Oncology, LLC d/b/a Heritage Hills Oncology Center.

        c.    The Defendant Ying is the actual agent, servant, and/or employee of the Defendant Comprehensive Physics and Regulatory Services, Inc. (CPRS).

        d.    The authenticity and admissibility of the medical records regarding treatment and care rendered by the Defendants to the Plaintiff, as well as all subsequent treating records from Johns Hopkins.

        e.    The fairness and reasonableness of the medical bills involved with the treatment and care of Amanda Barge rendered by Johns Hopkins physicians.

        f.    The admissibility of the photographs depicting the Plaintiff's injuries and treatment of same.

      g.    The admissibility of the curriculum vitae of the experts identified by the Plaintiff.

    9.    <u>Estimated Number of Trial Days</u>:  2-3 days for Plaintiffs' case.

    10.    <u>Any Other Matter</u>:

Respectfully submitted,

Dated: 2/19/03

*/s/ Richard Oare (by agent)*
Richard Oare, Esquire
U.S. Dist. Ct. M. D. ID #02985
1776 South Queen Street
York, Pennsylvania  17403
(717) 846-3000

Dated: 2/19/03

*/s/ Louis G. Close, III*
Louis G. Close, III, Esquire
Louis G. Close, III, P.A.
22 West Pennsylvania Avenue, Suite 300
Towson, Maryland  21204
(410) 296-3606

11