ORIGINAL

2 tr cv

FILED
HARRISBURG, PA
MAR 1 0 2003
MARY E. D'ANDREA,
Per _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA BARGE and<br>ARTHUR BARGE,<br>    Plaintiffs | : | |
| v. | : | CASE NUMBER: 1:00-CV-1881 |
| DAVID J. SALINGER, M.D.;<br>WILLIAM YING, Ph.D.;<br>KEYSTONE ONCOLOGY, LLC d/b/a<br>HERITAGE HILLS ONCOLOGY CTR.;<br>COMPREHENSIVE PHYSICS AND<br>REGULATORY SERVICE, LTD. and<br>EQUIMED, INCORPORATED, | : | Judge Connor |
|     Defendants | : | JURY TRIAL DEMANDED |

**TRIAL BRIEF OF DEFENDANTS WILLIAM YING, Ph.D. AND
COMPREHENSIVE PHYSICS AND REGULATORY SERVICES**

I. Statement of Facts

The above-captioned matter is a medical malpractice action which seeks recovery of damages for the Defendants' alleged negligence during the course of superficial radiation treatment being administered to Plaintiff Amanda Barge. Defendants Ying and Comprehensive Physics and Regulatory Services (CPRS) deny any liability in this matter.

The Plaintiff, Amanda Barge, was diagnosed with recurrent basal cell cancer of the upper lip in the early part of 1999. It was recommended that she either

1

undergo surgical removal of the cancer or that she undergo superficial radiation treatment of the affected area. Mrs. Barge elected to undergo the radiation therapy. This therapy was scheduled to be performed at the Heritage Hills Cancer Center, under the supervision of Dr. David Salinger. Superficial radiation treatment was a new therapy option which Dr. Salinger wanted to offer to his patients.

Because superficial radiation treatment was a therapy which was new to the Heritage Hills Cancer Center, it was necessary to obtain a superficial treatment x-ray machine. This equipment was purchased by Keystone Oncology from Equimed, Inc., and was installed in early April 1999. Dr. William Ying, an employee of CPRS, was the radiation physicist who tested the equipment to determine the nature of the radiation output. The evidence will establish that final certification of the machine was achieved after a calibration chamber was sent to the MD Anderson Cancer Center for certification. MD Anderson referred the chamber to K & S Associates for the determination of calibration factors. After the chamber was returned, it was utilized with the superficial treatment x-ray machine to measure the outputs. This resulted in the development of output values and times to be utilized by the physician in the creation of his radiation treatment plan.

Mrs. Barge was one of the first patients scheduled for superficial radiation treatment at the hands of Dr. Salinger. This treatment began on May 24, 1999. The treatments proceeded until June 8, 1999, under the direction of Dr. Salinger and his staff. Significantly, Dr. Ying was not involved in the administration of treatment. As a radiation physicist, he is not a medical doctor and, accordingly, is not involved in actual treatment and therefore has absolutely no contact with the patients.

On June 8, 1999, Dr. Ying was advised by Dr. Salinger that Mrs. Barge was showing the signs of an inappropriate reaction to the radiation treatments. Upon

2

learning of the concern about the treatment, Dr. Ying immediately advised Dr. Salinger to cease use of the superficial treatment machine until it could be checked for a malfunction. Examination of the equipment revealed that the machine had increased its output to a significantly higher output than the output at the time of the initial calibration.

Dr. Salinger continued to treat the Mrs. Barge, following the discontinuation of the radiation treatments. After several weeks of topical treatments, Mrs. Barge sought consultation with other physicians. These physicians have assumed responsibility for her care, which has included plastic surgical revision of the blistering of the skin. Significantly, there has been no return of the basal cell carcinoma.

II. Questions Presented

    A. Did Dr. Ying comply with the standard of care during the acceptance testing and calibration of the superficial treatment machine installed at the Heritage Hills Oncology Center?

    B. If the jury should determine that Dr. Ying failed to comply with the standard of care, is that negligence superseded by the negligence of Dr. Salinger thereby relieving Dr. Ying of responsibility?

III. Legal Authority

*Application of Pennsylvania Substantive Law*

The District Court has jurisdiction of this matter by virtue of the diversity of citizenship of the parties. See 28 U.S.C.A. § 1332(a). A Federal Court, sitting in diversity, is required to apply to substantive law of the state with the most significant contacts to the litigation. See Erie Railroad v. Tompkins, 304 U.S. 64

3

(1938). In this case, since all treatment at issue was provided in Pennsylvania, and the defendants, at all times material hereto, were operating under the dictates of Pennsylvania Law this court must apply the substantive law of the Commonwealth of Pennsylvania to the resolution of the issues pending between the parties.

*Elements Of A Medical Malpractice Suit*

In Pennsylvania, medical malpractice is viewed as a tort and, as such, the general rule of negligence is applied to medical malpractice lawsuits. Speck v. Finegold, 268 Pa. Super. 342, 408 A.2d 496 (1979), aff'd in part and rev'd in part 497 Pa. 77, 439 A.2d 110.

As a general rule, negligence in a medical malpractice case may be viewed as a breach of the physician's duty to exercise reasonable skill and care in the treatment of a patient. In order to recover from a physician for malpractice based upon negligence, the plaintiff must prove all four of the following:

> (1) DUTY. The patient-plaintiff must show that the physician in question owed him or her a particular duty or obligation. This duty, recognized by law as created by the physician/patient relationship, requires the physician to act in accordance with specific norms or standards established by the profession, commonly referred to as the standard of care.
>
> (2) BREACH OF DUTY. The patient-plaintiff must show that the physician failed to act in accordance with those norms by any act or omission violating the standard of care owed the patient-plaintiff.
>
> (3) CAUSATION. The patient-plaintiff must show that a reasonable, close, causal connection exists between the acts of the physician and the resulting injury.
>
> (4) DAMAGES. The plaintiff must establish that because of the physician's acts or omissions, actual loss or damage has been incurred.

4

In order to establish that a defendant breached some duty of care owed to the plaintiff, "it is incumbent on a plaintiff to establish a causal connection between the defendant's conduct and the plaintiff's injury." Hamil v. Bashline, 481 Pa. 256, 265, 392 A.2d 1280, 1284 (1978). In other words, the mere occurrence of an injury does not prove negligence unless the defendant's conduct is shown to have been the proximate cause of plaintiff's injury. Gift v. Pulma, 392 Pa. 628, 141 A.2d 407 (1958).

> Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant, . . . and it may be established by evidence that the Defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. (Citations omitted).

Hamil v. Bashline, supra at 265, 392 A.2d at 1284. Where the plaintiff's injury would have been sustained even in the absence of the actors negligence, however, the defendant's negligent conduct may not have been found to be a substantial cause of the injury. Hamil v. Bashline, supra. Although the element of the causation is normally a question of fact for the jury, it is permissible to remove the question of causation from the jury's consideration where it is clear that reasonable minds could not differ on the issue. Topelsky v. Universal Southside Autos, Inc., 407 Pa. 339, 180 A.2d 414 (1962); Hamil v. Bashline, supra.

*Standard Of Care*

Plaintiff cannot establish a *prima facie* case of medical malpractice without, *inter alia*, presenting an expert witness who will testify

> to a reasonable degree of medical certainty. that the acts of the [defendant] physician deviated from good and acceptable medical

5

>standards . . . . <u>Mitzelfelt v. Kamrin</u>, 526 Pa. 54 at 62, 584 A.2d 888 at 892 (1990).

<u>Maurer v. Trustees of the University of Pennsylvania</u>, 418 Pa. Super. 510, 614 A.2d 754 (1992). <u>See</u> <u>also</u> <u>Lira v. Albert Einstein Medical Center</u>, 384 Pa. Super. 503 at 509, 559 A.2d 550 at 552 (1989), stating the general rule that expert testimony is required to establish the standard of reasonable medical care in a medical malpractice case. A physician's own personal standard of care does not suffice to prove a deviation from the applicable standard of care. <u>See</u> <u>Maurer v. Trustees of the University of Pennsylvania</u>, <u>supra</u>.

The standard of care for a specialist is "[t]hat degree of skill, learning and care normally possessed and exercised by the average physician who devotes special study and attention to the diagnosis and treatment of diseases within the specialty." <u>Pratt v. Stein</u>, 298 Pa. Super. 92 at 156, 444 A.2d 674 at 708 (1982). It is an objective and not a subjective standard. <u>See</u> <u>Maurer v. Trustees of the University of Pennsylvania</u>, 418 Pa. Super. 510, 614 A.2d 754 (1992).

*Dr. Salinger had the last clear chance to avoid injury to the patient*

The evidence will establish that Dr. Salinger claims to have expressed concern about the accuracy of the calibration of the radiation therapy equipment prior to its use for treatment.[1] Such an expression of concern relieves Dr. Ying of legal liability to the Plaintiff. As expressed by the Pennsylvania Supreme Court:

>Where second actor has become aware of existence of potential danger created by negligence of original tort-feasor, and thereafter brings about an accident, the original tort-feasor is relieved of liability because condition created by him was merely a circumstance of the accident and not its proximate cause, but where second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous

---

[1] This testimony is disputed by Dr. Ying. Nonetheless, the dispute is irrelevant for purposes of this discussion since the alleged testimony of Dr. Salinger constitutes an admission as it relates to his potential legal liability.

6

condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both tort-feasors.

Coleman v. Dahl, 92 A.2d 678, ___, 371 Pa. 639, 644 (1952). In the case at bar, if Dr. Salinger was of the opinion that the calibration figures provided for treatment of his patient were incorrect he had the last clear chance to avoid injury to the patient. This is especially so if the testimony of the Plaintiff, that she reported complaints of pain, discomfort and changes in her skin appearance after every treatment, is believed. Importantly, the concepts enunciated by the Pennsylvania Supreme Court were cited with approval by this Honorable Court in the case of Senese v. Peoples, 626 F. Supp. 465 (M.D.Pa., 1985).

IV. Conclusion

Dr. Ying and CPRS respectfully submit that the evidence will establish that Dr. Ying at all times acted properly and within the standard of care. Alternatively, should the jury determine that Dr. Ying acted negligently, the evidence will establish that the negligence of Dr. Ying was not the proximate cause of the Plaintiff's alleged injury.

Respectfully submitted,

Joseph A. Ricci
Pa. ID 49803
Farrell & Ricci, P.C.
4423 North Front Street
Harrisburg, PA 17110
(717) 230-9201
Counsel for Dr. Ying and
Comprehensive Physics and Regulatory
Services

7

CERTIFICATE OF SERVICE

I, Joseph A. Ricci, certify that I am this day serving a copy of the foregoing Trial Brief of William Ying, Ph.D. and Comprehensive Physics and Regulatory Services upon the persons listed below by personal delivery addressed as follows:

Richard Oare, Esq.
1434 South George Street
York, PA 17403

Louis G. Close, Esq.
22 West Pennsylvania Avenue
Towson, MD 21204

B. Craig Black, Esq.
2040 Linglestown Road
Harrisburg, PA 17110

Dated: 3-10-03